UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LEPPEK,

       Plaintiff,                        Civil Action No. 18-13801
                                               Honorable Paul D. Borman
v.                                                    Magistrate Judge David R. Grand

FORD MOTOR COMPANY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE DR. DAVID BURDETTE FROM TESTIFYING IN AN EXPERT CAPACITY AND TO PRECLUDE RELIANCE ON HIS "EXPERT" REPORT AND SIMILAR EVIDENCE (ECF No. 29)**

**I.    REPORT**

Before the Court is Defendant Ford Motor Company's ("Ford") Motion *in Limine* to Preclude Dr. David Burdette from Testifying in an Expert Capacity and to Preclude Reliance on his "Expert" Report and Similar Evidence, which was filed on September 14, 2020. (ECF No. 29). Plaintiff David Leppek ("Leppek") filed a response in opposition to this motion on October 26, 2020 (ECF No. 33), and Ford filed a reply on November 2, 2020 (ECF No. 37). This motion was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 31). The Court held oral argument on December 1, 2020.

    **A.    Background**

In this case, Leppek – who suffers from medically refractory epilepsy (i.e., epilepsy that cannot be controlled with medication) – brings a single-count complaint against Ford

for violating the Americans with Disabilities Act ("ADA"). After Leppek suffered five workplace seizures in an eight-month period, Ford determined that it could not safely accommodate the restrictions put in place by Leppek's treating physician, Dr. David Burdette. Since then, while Leppek strongly desires to return to work, he has remained on medical leave (where he continues to receive disability benefits under Ford's plan) based on the results of an independent medical examination that is binding under the applicable collective bargaining agreement.

Ford has filed a motion for summary judgment, arguing that because Leppek cannot perform his duties with or without reasonable accommodation, he is not a "qualified individual" under the ADA. (ECF No. 27). Ford also argues that Leppek's condition poses a direct threat to the health and safety of himself and others, insulating Ford from ADA liability. (*Id.*). Simultaneous with the filing of Ford's summary judgment motion, it filed the instant one, in which it asserts that it "anticipates that [Leppek] plans to introduce at least parts of the deposition testimony, as well as trial testimony if this matter proceeds to trial, of Dr. David E. Burdette, the physician who has treated [Leppek's] epilepsy over several years, including by designating medically refractory epilepsy as [Leppek's] diagnosis and rendering other care and treatment." (ECF No. 29, PageID.1370). Ford does not dispute that Dr. Burdette can testify regarding Leppek's "care and treatment," but it asserts that Leppek has "further indicated his intent to offer Dr. Burdette in an expert capacity." (*Id.*).

Ford's motion did not make entirely clear the specific "opinions" of Dr. Burdette's it was seeking to strike, and its actual request for relief – "that the Court strike the allegedly

2

expert opinions, testimony, and reports of Dr. Burdette, as well as any similar testimony" – was quite vague. (*Id.*, PageID.1384). However, Ford's motion highlighted the following statements made by Dr. Burdette that give some context:

- Leppek's impaired awareness seizures have long been controlled by his medications, and with the implant of a vagus nerve stimulator in August 2016, Leppek's "seizures were well controlled following the implantation." (ECF No. 33-1, PageID.1428-29, ¶¶ 16-17).

- "Mr. Leppek reports experiencing an aura prior to his seizures. These consist of a feeling in his body that could lead to a tremor on the left side of his body that warned him that a seizure could occur. Seizures do not always occur after auras. He reports that often he will be able to control his breathing, posture and tremors to avoid impairment of awareness." (*Id.*, PageID.1429-30, ¶ 19).

- "Because of his auras, Mr. Leppek has been able to take precautions if he knew a seizure was about to occur to ensure his safety and others during the upcoming seizure, such as stepping away from equipment or other dangerous items during his daily activities." (*Id.*, PageID.1430, ¶ 20).

- Leppek could safely perform the duties of his job if he had plant security escort him to and from the job site. (ECF No. 33-2, PageID.1483, pp. 182-83).

But Ford's real request seems to be that the Court preclude Dr. Burdette from opining "that [Ford], from November 22, 2017 to the present, could accommodate [Leppek's] restrictions without [Leppek] posing a danger to himself or others." (ECF No. 29, PageID.1383).

Ford argues that Dr. Burdette's opinion does not satisfy Federal Rules of Evidence 702 and 703 because it does not meet the requisite standards of reliability, and is speculative. (*Id.*, PageID.1370-71). In support of its position, Ford notes that Dr. Burdette never entered the Sterling Axle Plant, and that he does not know anything about the specific

3

layout, jobs, or work environment there, other than what Leppek has told him. Indeed, Dr. Burdette admits that his understanding of the Sterling Axle Plant's dangers, and how they relate to Leppek's capabilities, are based solely on Leppek's self-reports.[1] (*Id.*, PageID.1443, 1467). Ford asserts that, in support of his opinions, "Dr. Burdette did not consult any of the authoritative resources typically relied on by experts, performed no exams or tests, and did not review any scientific data." (ECF No. 29, PageID.1377).

B.  **Legal Standard**

Federal Rule of Evidence 702 provides, in relevant part:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court "established guidelines for district courts to use in determining the admissibility of expert testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence[.]" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 597-98). A proposed expert witness "must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride*, 218 F.3d at 577 (quoting

---

[1] Dr. Burdette testified that one of these opinions – that Leppek's impaired awareness seizures have long been controlled by medications – is not actually true. (ECF No. 33-2, PageID.1465, pp. 110-11). Thus, the Court understands Leppek is not proposing to have Dr. Burdette offer that particular opinion.

4

Fed. R. Evid. 702). Next, the testimony must assist the trier of fact and "must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify." *Id.* at 577-78 (citing *Daubert*, 509 U.S. at 593-94).

The district court's function as a gatekeeper is "to determine whether the principles and methodology underlying the testimony itself are valid[,]" *United States v. Bonds*, 12 F.3d 540, 556 (6th Cir. 1993), "not to second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." *Pride*, 218 F.3d at 577; *see also Daubert*, 509 U.S. at 595 (emphasizing that the focus of the inquiry "must be solely on the principles and methodology, not on the conclusions that they generate"). Thus, a Rule 702 inquiry is "a flexible one." *Daubert*, 509 U.S. at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Finally, the party proffering the expert testimony must demonstrate by a preponderance of proof that the potential expert witness meets the requirements discussed above. *See Pride*, 218 F.3d at 578 (citing *Daubert*, 509 U.S. at 592 n. 10).

Federal Rule of Evidence 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

**C.    Analysis**

In this case, Ford argues that Dr. Burdette should be precluded from opining that

5

Ford could accommodate Leppek's restrictions without Leppek posing a danger to himself or others because he "did not employ reliable principles or methods" and his opinion is not based on sufficient facts or data. (ECF No. 29, PageID.1381). The opinion in question really has two components: (1) what Leppek's capabilities are vis-à-vis his medical condition; and (2) whether (and how) those capabilities, in the context of his specific work environment at Ford, can be accommodated without endangering Leppek or others. While Dr. Burdette, based on his medical expertise and treatment of Burdette, can certainly opine as to the first component, his opinion as to the second is not based on sufficient facts or data, and is otherwise problematic.

Ford claims that, aside from listening to Leppek's self-reports – reports which Dr. Burdette himself acknowledged are not always reliable because patients often fudge the details of their seizure activity due to a fear of being placed on leave from their jobs (ECF No. 33-2, PageID.1448-49, 54-55) – Dr. Burdette did nothing to ensure the reliability of his conclusions. For example, Dr. Burdette did not review Ford's records, talk to Leppek's co-workers, or examine the co-workers' contemporaneous reports about what they witnessed in terms of Leppek's unresponsive staring, loss of consciousness, and admitted absence of any memory of his seizure episodes, including the nearly fatal seizure he suffered in November 2017, which led to him being placed on leave. (ECF No. 33-2, PageID.1475).

Doctors routinely rely on reports from their patients in reaching opinions about their medical conditions and needs, so Dr. Burdette's reliance on Leppek's reports about his own seizure activity is not necessarily problematic. *See* FRE 703. Thus, to the extent Dr.

Burdette is opining as to *Leppek's capabilities and restrictions* based on Leppek's self-reports, the fact that those reports may not be entirely accurate goes to the opinion's weight, not its admissibility. Thus, to the extent Ford seeks to preclude Dr. Burdette from testifying about Leppek's medical conditions, his capabilities in general, or the work restrictions he requires, its motion should be denied.

The analysis is different, though, when it comes to Dr. Burdette's opinion about *Ford's ability and/or duty* to *safely accommodate* Leppek's restrictions. Dr. Burdette admits he has never been to the Sterling Axle Plant, does not know what job functions or duties exist there, and, other than the general information Leppek has self-reported, does not know anything about the physicality of those jobs or the work environment itself. (ECF No. 33-2, PageID.1443, 1471-72). Without that information, Dr. Burdette's opinion about Ford's ability to safely accommodate Leppek's conditions at the Sterling Axle Plant is not based on sufficient facts or data.

Courts considering similar fact patterns have reached the same conclusion. In *Crumpley v. Associated Wholesale Grocers*, No. 16-2298-DDC, 2018 WL 1933743 (D. Kan. April 24, 2018), the court considered a similar situation, in which the ADA plaintiff – who also suffered from a seizure disorder – alleged that the defendant discriminated against him because of his disability. There, the plaintiff sought to exclude the testimony of two of his own treating neurologists as to the effect of his seizure disorder on his qualifications for employment with the defendant and his ability to perform his job duties there or for other employers. *Id.* at *2. The *Crumpley* court considered the plaintiff's argument, distinguishing between the types of opinions his treating physicians provided as

7

follows:

> Here, both Drs. Kaplan and Seeley treated plaintiff. So, they may testify about things they observed during their treatment. And their testimony may include opinions encompassed within their "ordinary care" of plaintiff. But when the challenged testimony goes beyond the scope of the physician's personal knowledge based on his examinations during treatment, the court must analyze it just as it would any expert testimony.

*Id.* at *4 (internal citations omitted). Applying these principles, the court held that the plaintiff's treating neurologists could opine about "what activities . . . would be safe for him to perform in light of his medical condition," but not about his "ability to perform the duties of a specific job" where the experts had no adequate foundation due to the fact that they were unaware of the intricacies of the plaintiff's job duties and had not visited his work site. *Id.* at *6 (citing *Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 478 (D. Kan. 2001) and *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996)). Here, although Dr. Burdette reviewed Leppek's job description, he did not visit the worksite or observe Leppek performing his duties in that environment; thus, as in *Crumpley*, he may not reliably testify, based on "sufficient facts or data," about Leppek's "ability to perform the duties of a specific job" and whether Ford could reasonably accommodate Leppek's disability at the Sterling Axle Plant without Leppek posing a danger to himself or others.

Leppek tries to bolster the purported facts on which Dr. Burdette's opinion rests by noting that from his "military career" Dr. Burdette is "familiar with industrial facilities" and able to "identify hazardous areas." (ECF No. 33, PageID.1417). But Dr. Burdette's actual testimony on this topic was that he "served as a neurologist in the Air Force from

8

1992 to 1995" with the "majority of that time [] spent at Wright-Patterson Air Force Base, in Dayton, Ohio, and [] the winter of 1995 in Gitmo." (ECF No. 33-2, PageID.1482). The Court agrees with Ford that this does not constitute "sufficient facts or data" for Dr. Burdette to opine about how Leppek's condition and abilities could be safely accommodated in Ford's Sterling Axle Plant, which Leppek does not deny is a "modern, highly automated industrial facility filled with automated guided vehicles towing 25,000-pound loads." (ECF No. 37, PageID.1961). In short, there is a significant difference between Dr. Burdette opining, for example, that Leppek could safely work in a factory setting where he was not exposed to traffic areas with automated hi-lo vehicles, versus opining, based on nothing more than Leppek's say so, that Ford's Sterling Axle Plant is such a facility. (ECF No. 33-2, PageID.1472-73).

In *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020), the Court observed that "the issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." (internal quotations omitted). Here, while Dr. Burdette is clearly qualified to testify regarding Leppek's medical condition, his restrictions and capabilities, and even the types of accommodations and workplace settings that would meet his medical needs, Dr. Burdette's opinion that Ford could reasonably accommodate Leppek's disability without Leppek posing a danger to himself or others *at the Sterling Axle Plant, in particular*, is not based on sufficient facts or data, and thus is inadmissible.[2] *See Crumpley*, 2018 WL

---

[2] The Court expresses no opinion as to whether Dr. Burdette's allowable testimony, coupled with Leppek's own testimony and/or other evidence regarding his particular workplace, is sufficient to

9

1933743, at *6; *Pride*, 218 F.3d at 577; Fed. R. Evid. 702.

Leppek's argument that Ford's attack on Dr. Burdette goes to the *weight* of his testimony, not its admissibility, lacks merit. (ECF No. 33, PageID.1419) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 181 (6th Cir. 2009)). It is true that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are still available to the opposing party to attack "shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Indeed, "mere weaknesses in the factual basis of an expert witness' opinion … bear on the weight of the evidence rather than on its admissibility." *McClean v. 988011 Ontario Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (internal quotations omitted). But here, the issue goes beyond a merely "weak" factual basis; Dr. Burdette simply cannot reliably opine on *Ford's ability* to accommodate to Leppek's disability – which could pose a serious danger to him and others – without knowledge of the particular work site in question.

*Crumpley* highlights another reason for not permitting Dr. Burdette to opine that Ford could reasonably accommodate Leppek's medical impairments at the Sterling Axle Plant. The *Crumpley* court also disallowed the treating physicians' opinions that the plaintiff was "qualified" for a particular job because, in an ADA case, "an opinion about whether [the] plaintiff is qualified is a legal conclusion." *Crumpley*, 2018 WL 1933743 at *6. Here, Dr. Burdette's proposed opinion that Ford could "accommodate" Leppek's restrictions without Leppek posing a danger to himself or others also wades into a legal

---

raise a material question of fact on his ADA claim.

10

issue.

In *Alvarado v. Oakland County*, 809 F. Supp. 2d 680 (E.D. Mich. 2011), the court explained, "[t]he problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'" *Alvarado*, 809 F. Supp. 2d at 688 (quoting *Torres v. County of Oakland, et al.*, 758 F.2d 147, 151 (6th Cir. 1985)).  Here, Dr. Burdette was asked about the hazardous nature of Leppek's workplace, which is relevant because Ford's "direct threat" defense turns on its ability to show its Sterling Axle Plant posed "a significant **risk to the health or safety of others** that cannot be **eliminated** by reasonable accommodation." 42 U.S.C. § 12111(3) (emphasis added).  But Dr. Burdette's testimony that Ford could accommodate Leppek was based on his belief that "a hazardous area would be one whether [sic] you are *imminently at risk for dying* . . . [d]uring *a significant portion of*" the time spent there (ECF No. 33-2, PageID.1482-83) (emphasis added).  Dr. Burdette later testified, "I don't know what the legal definition of 'hazardous area' or if there is one, an OSHA one, I just plead ignorance." (*Id.*, PageID.1491.)  Again, this highlights precisely why Dr. Burdette should not be permitted to offer testimony that utilizes his own definition of a legal term. *See, e.g., Orner v. Nat'l Beef Packaging Co., LLC*, No. 4:13-cv-0837, 2015 WL 8334544 (M.D. Pa. Dec. 9, 2015); *Hillery v. Sun City Anthem Comm. Ass'n, Inc.*, No. 2:17-CV-02639, 2019 WL 5095780 (D. Nev. Oct. 11, 2019).

Accordingly, to the extent Ford seeks to preclude Dr. Burdette from testifying that Ford could "accommodate" Leppek's restrictions without Leppek posing a danger to

11

himself or others, Ford's instant motion should be granted.

## II.     RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Ford's Motion *in Limine* to Preclude Dr. David Burdette from Testifying in an Expert Capacity and to Preclude Reliance on his "Expert" Report and Similar Evidence **(ECF No. 29)** be **GRANTED IN PART AND DENIED IN PART** as discussed above; Dr. Burdette should be permitted to testify about his care and treatment of Leppek, including Leppek's medical conditions, restrictions, capabilities, and the types of accommodations and workplace settings that would meet his medical needs, but Dr. Burdette should be precluded from testifying that Ford could accommodate Leppek's disability at the Sterling Axle Plant without Leppek posing a danger to himself or others.

Dated: February 18, 2021            s/David R. Grand
Ann Arbor, Michigan                 DAVID R. GRAND
                                    United States Magistrate Judge


## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections

that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 18, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager